Our first case up this afternoon is re-estate of BATS, BATS O'Brien I guess, it's number 4-12, 1123 and 1122 consolidated. For the appellant is Scott Dempsey, you are he sir? Yes. Okay, Mr. Dempsey, you may proceed. May I please report counsel? Counsel. There are two issues in this consolidated appeal. The first issue is whether or not the trial court properly applied the doctrine of collateral estoppel in the probate proceedings in Douglas County to bar the spouse of Susan K. BATS O'Brien from contesting his right to a hearing to determine whether or not he could renounce a will executed by Ms. BATS O'Brien and claim a spouse's share of the estate. The trial court applied the doctrine of collateral estoppel and found that in order of eviction, entered in a separate forcible and infant detainer proceeding filed by the estate against Mr. O'Brien, collaterally stopped Mr. O'Brien from contesting his right to participate in the estate, his right to have a hearing to renounce the will to claim the spouse's share of the estate. It's our position on that issue that the trial court erred in applying the doctrine of collateral estoppel. The second issue is whether or not the trial court erred in entering an order of eviction given the fact that at the same time the order of eviction was entered in the forcible injury detainer case, there had been an order entered in the probate case finding that Mr. O'Brien was an heir. There was an order of heirship finding that he was still an heir at the time that the forcible injury detainer complaint went to trial and an order of eviction was entered in that case. With respect to the collateral estoppel issue, the elements that are required for the court to apply collateral estoppel are well known. They're set forth in our brief and the Appellee's brief. The first issue is that the issue decided in the prior adjudication is identical to the one presented in the subsequent litigation. It's not enough that the issue is close or it may be similar. If there's any doubt about whether or not the issues are identical between the prior litigation and the subsequent litigation, the court should not apply the doctrine of collateral estoppel. The second element that must be established is that there was a final judgment on the merits in the prior adjudication. And the third element is that there is the same parties involved in the prior litigation as the subsequent litigation or that they're privy. There's no dispute that the third element of collateral estoppel applies to this case. The first, the probate case involved various petitions filed by Mr. O'Brien. He was the spouse of Ms. Pats O'Brien at the time of her death on February 27, 2012. They had been married on February 23, 2012. All those are not in dispute. He was a party in the probate case. The state obviously was a party. Likewise in the eviction case, there's no dispute we have the same parties as in the probate case. The executor filed a forced plundering detainer action to evict Mr. O'Brien from the residence that he was sharing with his wife at the time of her death. Obviously there's the same parties that are involved. However, the first two elements of collateral estoppel I believe were not established and that is why the trial court erred in applying the doctrine of collateral estoppel to bar Mr. O'Brien from participating in the estate, from attempting to renounce his wife's will, from contesting the validity of the alleged prenuptial agreement that served as the basis for the order of eviction in the forcible entry and detainer case. And I think if you review the transcript of the trial on the forcible entry and detainer complaint, it's clear that the only issue that was actually litigated at that trial was whether or not Susan K. Batts O'Brien and Louis O'Brien actually signed and executed the prenuptial agreement or the antinuptial agreement as it's referred to in the trial court. That agreement was introduced in the evidence and it's clear by review of the evidence that Mr. O'Brien never presented any other defense to the enforcement of the antinuptial agreement. His only claim was, I didn't sign this agreement, I signed some agreement, this is not the agreement that I signed, this is a forgery. And I think the fact that that's the only issue that was litigated in the forcible entry and detainer case is further supported by the fact that Mr. O'Brien is a pro-state litigant in that forcible entry and detainer case. He attempted to admit into evidence an affidavit from a document examiner from Texas that contained affidavits in which he indicated that the signatures on the alleged antinuptial agreement for both Susan K. Batts O'Brien and Louis O'Brien were in fact forgeries. Those documents were denied admission by the trial court improperly so those were hearsay documents. But that's the only evidence really that Louis O'Brien presented at the hearing on the complaint for forcible entry and detainer in opposition to the claim that he should be evicted from the property. And if you look at it from the estate side, the only evidence presented by the executor at that hearing consisted of some brief testimony by the executor herself where she just testified about her relationship to her deceased mother, who Mr. O'Brien was and things of that nature. And then more importantly, evidence from an assistant for Mr. Lee who testified that she in fact witnessed Ms. O'Brien and Mr. O'Brien both signed the antinuptial agreement. She notarized those agreements or notarized her signatures and that they came to Mr. Lee's office and signed those agreements. That's the only other evidence that was presented. The problem is that those issues are not identical to potential defenses to the enforcement of the antinuptial agreement that Mr. O'Brien may have in the probate case. And the requirements for a prenuptial agreement or an antinuptial agreement are set forth in the Illinois Uniform Premarital Agreement Act and Section 3 says that the premarital agreement must be in writing and signed by both parties. And I think that's really the only issue that was actually litigated at the trial on the forcible entry detainer complaint and there must be consideration. Well, that issue wasn't addressed. So I don't think Mr. O'Brien is foreclosed from claiming at a hearing on whether or not he's entitled to participate in the state because this is not a valid antinuptial agreement that there was no consideration. But more importantly, Section 7 of the Uniform Premarital Agreement Act sets forth various other requirements and says that a premarital agreement is not enforceable if that party did not execute the agreement voluntarily or if the agreement was unconscionable and lists a number of factors that must be satisfied to show that the agreement is not unconscionable including that a party did not voluntarily and expressly waive in writing any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided or that a party did not have or recently could not have had an adequate knowledge of the property or financial obligations of the other party. And I think these are all legitimate defenses to the enforcement of the antinuptial agreement. They were certainly never litigated at the trial in the forcible entry and detainer complaint. None of these issues were ever raised in any respect in the trial in the forcible entry and detainer complaint. I went over the evidence and it's a pretty short transcript and the court can look at it and see that there was absolutely nothing that was raised with respect to any other defense to the enforceability of the antinuptial agreement that Mr. O'Brien raised at the trial in the forcible entry and detainer complaint. And I think the trial court itself recognized that that was the only issue that was in fact litigated. If you look at the trial court's ruling, the conclusion of the trial in the forcible entry and detainer complaint, Judge Carroll said specifically this is a forcible entry and detainer action. You maybe, you didn't have Mr. Baggett who was the expert forensic document examiner here to testify and that's why I didn't allow you to submit the affidavits from Mr. Baggett about whether or not these agreements were valid or not. But that doesn't mean you still may not win in the estate and wind up with a third of the estate. And Judge Carroll further goes on to state this. So you still have the opportunity with Mr. Baggett on that. If you win on that one, you get to renounce the will and get a third of the estate. Doesn't mean you get the house. Do you understand that? And you address Mr. O'Brien. So clearly the trial court didn't believe when it was ruling on the complaint for forcible entry and detainer that they were foreclosing Mr. O'Brien by collateral estoppel from pursuing any other defense to the validity or the enforcement of the antinuptial agreement in the probate case. And then if you look at the court's specific findings following that, Judge Carroll indicated this court is going to find the petitioner has met the burden of proof. The court would specifically note a prenuptial agreement or antinuptial agreement signed and notarized by the testimony of Marta Slaughter, which is Mr. Lee's assistant, which was almost wholly undisputed. Mr. O'Brien testifies and denies that this is the document signed. And he talked about another document not introduced into court, some suggestion of forgery. And then the court goes on to say he's obviously not a forgery expert, but based upon the court's own comparison of the signatures, the court's lay opinion would be that if this is a forgery, it's a master forger unbelievably highly skilled in copying the signature. So those are the specific findings of the trial court. And the only issue, only findings made by the time were that this is not a forgery. These are not forged signatures on this agreement. No other issue relating to or no other defense to the enforceability of the antinuptial agreement was raised, was addressed by the trial court in its ruling on the complaint for forceful entry and detainer. So I think it's clear that we're talking about very separate issues. And even if the trial court finds that Mr. O'Brien is collaterally stopped from relitigating whether or not he signed the agreement, that's one possible finding the trial court could have made or that this court can make, that that issue in fact was litigated for the trial court on the complaint for forceful entry and detainer, whether or not he signed the agreement, that's an issue that he could be collaterally stopped from relitigating in the estate case. But since no other issues were actually litigated on the complaint for Mr. O'Brien is not collaterally stopped from raising any other defenses in the estate case to say that this is not a valid antinuptial agreement or that even if this agreement was signed by both parties, it's not enforceable under the terms of the United States. You're asking us to reverse the trial court's decision in the forceful entry case? We are doing that as well, yes. Why? The statutes... Sir, this is not a public forum for discussion. Okay. You may sit there and be... Sir, say nothing further. You may sit there and be quiet or you'll be escorted out of here if you utter another word. You may continue, Counsel. Well, specifically, the Probate Act provides for the procedure under which a representative of a state can seek removal of an heir from the property. And at the time that the complaint for forceful entry and retainer went to trial, there had been an order entered in the probate estate finding that Mr. O'Brien was an heir of Susan Batts O'Brien. That order had not been modified. No order had been entered in the estate case indicating that we've now reviewed the internuptial agreement and we are going to modify the order finding heirship to find that Mr. O'Brien is no longer an heir of Ms. O'Brien. So Section 20-1 of the Probate Code says specifically that a representative may not take possession of real estate occupied by an heir or legatee. Does he fit either of those categories? He certainly would be an heir because he was married to Susan Batts O'Brien at the time of her death. There still would be the issue about whether or not he has given up his rights as an heir under the internuptial agreement. And that gets back to whether or not the internuptial agreement is a valid agreement. But at the time that the separate forceful entry and retainer case was filed, and at the time the separate forceful entry and retainer case went to trial, there was still an order in the probate case saying that Mr. O'Brien was an heir to Ms. O'Brien. How does that affect the forcible entry case? Well, if you apply Section 20-1... Well, I'm not being clear. Was that finding of heirship such as it was, is that binding upon the court in the forcible entry and retainer case? I believe it would be. Why? Because it's still an order that was entered prior to the court going and conducting the trial. Was it the same judge? It was the same judge. I'm not clear as to why one case, a finding in a given case, is binding upon the court, whether it's the same judge or not. In the separate case where the forcible entry and retainer is at issue, isn't an heirship a matter where you're talking about if it's a matter of intestacy? Well, she died with a will, and there was no provision in the will to provide... But heirs are when you're a di-intestate. You're a legatee if you're named in the will. She didn't di-intestate, and he wasn't named in the will, so why is he heir or legatee? Well, even if he's not named in the will, he still would certainly be an heir under the definition of the Probate Act because he was her spouse at the time of her death. And so the Probate Act gives an heir or the spouse certain rights, including the right to renounce the will to claim a spouse's share of the estate. And so if you look at Section 20.1, which bars the representative from evicting a heir  So at the time of the forcible entry and retainer action, had he renounced the will? No. He had filed a petition to renounce the will and claim a spouse's share of the estate. But there had been no hearing on that, and ultimately that's what the court, when the court applied the Doctrine of Collateral Estoppel, the court entered judgment on the pleadings against him on his petition to renounce the will and the petition to claim the spouse's share. I'm just focusing on the forcible entry and retainer for the moment. At that moment, at the time the hearing is conducted, he's neither an heir or a legatee. You're arguing that he has the potential to renounce the will, and potential then, I guess, if a spouse renounces the will, maybe then it's like inheriting the estate? Correct. He would be able to claim a third of the estate. So in statute, use of the terms heir or legatee, does it not? Correct. It says... So if you're not an heir or legatee, you have no claim? Correct. But he was an heir. Well, but heir is a term of art, is it not? It applies only in Eston. In circumstances when there's no will, by intestate. He would still be an heir regardless, because if he died, or if she dies with a will, then certainly there's legatees who can take under the will. If the spouse is not provided for under the will, that spouse is still an heir, and the spouse can renounce the will. Well, it says the spouse may have a right to renounce the will and take, but this is a term of art, heir, is it not? That's correct. It's defined by the Constitution. Okay, and is this... When the statute talks about heirs or legatees, what you're now doing is incorporating a third criterion. So, heir, legatee, or spouse who has or might renounce the will and then have a claim against the estate, either of those three can't be moved out of the home under a forced launcher and container action. The statute doesn't say that, does it? No, the spouse is an heir, and whether or not he renounces the will or not, he's still an heir. We're fencing around with this term. You've told me now repeatedly the spouse is an heir. Correct. What is the basis in Illinois law for that designation? What is the basis of your claim that that's how it works? I believe that that's the way the courts have interpreted the term heir. That's not addressed specifically in our brief, but we did brief that subject for... As including a spouse who has renounced the will? We briefed for the trial court the issue of whether or not Mr. O'Brien would be considered an heir even if the antenuptial agreement was valid, and I believe the research that we conducted as part of the record, the memorandum we filed, was that yes, he still was an heir even though there was an alleged antenuptial agreement, even though he had filed the petition to renounce the will and filed the petition to claim the spouse as sheriff of the estate. Well, it seems to me your entire defense of the forced launcher and container action is he's an heir of legatee, so he can't be forced out. No, he can under some circumstances. I mean, that's if the estate needs to be able to liquidate the property to pay debts and things like that. There was no evidence that the... Okay, well, those circumstances aren't present, so he can be forced out unless he's an heir of legatee. If he's occupying the property, that's correct. He would have to follow the procedures set forth in section... Well, it seems to me it would be your burden to establish beyond just some vague musings, which is what I'm hearing now, that he's an heir under Illinois law, even though, and I don't understand why that is, even though she did not buy intestate, that's the one we were talking about, airships, or a legatee because he wasn't mentioned in the will. And you keep telling me, but he's an heir, and I keep saying, based upon what? Yeah, we briefed that subject before the trial court. I don't have the specific answer. Well, be nice to share it with us, counsel. Yeah, I'm not sure that that was ever an issue in front of the trial court because I think Mr. Lee's research we presented to Judge Carroll indicated the same thing, that he, in fact, was an heir, was capable of giving up his rights. Maybe it's my fault. Maybe it's a broader definition, and I understand it to be, but I thought this was fairly limited. I'm sorry. I took a lot of your time, and if you want to continue otherwise, you may go ahead. Back on the Clyde Ostopol issue, I think it's clear that Mr. O'Brien has not given up his right to be able to present any other defense, the enforcement of the Antinomial Agreement, because there was no other issue that was, in fact, litigated at the trial enforcement So, clearly, the first element that would be necessary for the trial court to apply for the Clyde Ostopol issue is not present. The second element was not satisfied because at the time that the court entered judgment on the pleadings, there had already been filed a motion to reconsider the trial court's ruling on entering the forcible entry detainer complaint and to stay that ruling. And the trial court lifted that stay and denied the motion to reconsider, but Mr. O'Brien's right to appeal that decision was still pending. I think it's clear from the In Re, the Interest of A.W. case cited by both the appellee and our brief that as long as there is an appellate right or right to pursue a claim by appeal, it's not a final judgment. So, the second requirement that requires that there be a final judgment on the merits in order to apply the Doctrine of Clyde Ostopol has not been satisfied either. And therefore, we believe that the trial court erred in applying the Doctrine of Clyde Ostopol and denying my client the right to be able to have a hearing on the enforcement of the antinatural agreement. We ask the court to reverse the trial court's ruling. Okay, counsel. We'll have an opportunity to address this again in rebuttal. Mr. Lee? May it please the court? Counsel. Your Honor, I agree with Mr. Dempsey that I think there are two issues in the appeal. The first obviously has to do with the Doctrine of Clyde Ostopol which the trial court applied in this situation. Obviously, as the court is aware from my brief, I disagree, I guess, with Mr. Dempsey on the issues of Clyde Ostopol as those being issues here. I think as to identity of the issues for purposes of Clyde Ostopol, I believe that that exists. Counsel has sought throughout this appeal to frame the question here as whether or not that the issue decided by the trial court was one as to whether there was a forgery. But clearly, that's not what was decided by the trial court in the forcible entry and detainer case. There wasn't evidence of forgery presented to the trial court in the forcible entry and detainer case. The court heard evidence as part of the complaint for forcible entry and detainer to establish the execution, the proper execution and the validity of the prenuptial agreement that the parties had signed. And the court accepted that agreement in evidence and as a part of its ruling in the forcible entry and detainer for the basis to allow a order of forcible entry and detainer found that that agreement was properly executed and was valid and was the basis to award possession of the property to the estate. So I think what Mr. Dempsey has sought to do here is to narrow the issue by defining it very narrowly. But clearly, I think that issue is broader. It goes to the execution and the validity of the agreement. The other matters that he cites that are raised under the premarital agreement act are also matters that go to execution and validity of the agreement, the voluntariness of the agreement. But what about his argument that none of that was litigated in the forcible entry and detainer matter? It could easily have been, Judge. I mean, Mr. Dempsey essentially didn't present a defense. He could have presented a defense. Your argument is essentially it's collateral stop because a potential claim or defense under the anti-neutral agreement act wasn't presented in the forcible entry and detainer matter? Well, he had a full opportunity to present those issues, Judge, if he wanted to. If that was an issue, the voluntariness of his execution of the agreement, if there was some argument that somehow the agreement was unconscionable, that could have all, and you would have expected, would have been presented to the court. So if I understand your position, he could have, with regard to the forcible entry and the detainer action, raised defenses to the premarital agreement pursuant to the act and the premarital agreement act. And by not doing that in that forcible entry and detainer, he can't complain that collateral stop doesn't apply? That would be my position, Judge, yes. I think he had that opportunity to present those defenses, and naturally you would think that he would have presented those defenses if they existed to prevent the entry of the order of forcible entry and detainer. What about the finality issue, counsel? That is, the forcible entry and detainer matter was, the order was entered, granting possession, is that correct? Yes. And then you cite that as collateral estoppel regarding the probate action. Yes. But the forcible entry and detainer matter was still subject to appeal, and is an Illinois case law such that it's not final for purposes of restricted collateral estoppel if the appeal is still pending? I think, Judge, in every case where that's occurred, and the Illinois cases, the Supreme Court cases, the appellate cases indicate this, they talk about this. The fact that normally in this situation you're talking about litigation that occurs consecutively or sequentially, and so you have a case that was decided earlier, and perhaps the appeal period hasn't run, and then you have a decision that was made later. Well, here, these cases were all pending before the trial court at the same time, and they're all on appeal at the same time. How does that affect the finality issue? Well, I think the reason for the concern about finality of the earlier judgment is that we won't get inconsistent results. Obviously, in a second case, if the court made a ruling that there was a collateral estoppel, the court makes a ruling which it thinks is in conformity with the first decision, and then that decision is overturned on appeal, then you have the potential for inconsistent judgments based on the same or essentially the same evidence. Here, in our case, both cases are before this court now, so there's not a possibility of that occurring. Well, but the point is, at the time you argued, and apparently the trial court accepted your argument in the probate case in Douglas County, that its ruling in the first voluntary contender case constituted collateral estoppel, the plaintiff's position in the probate matter, that the other ruling was very recent and had not been subject to any appellate review, and all you knew, and Judge Carroll knew, could have been reversed. Is that right? Certainly the appeal period hadn't run, and obviously the case is here on appeal, so. Well, I'm not... If before collateral estoppel raised to the count applies, a party has a right to appeal the case they decided as barring the new case, didn't that apply here? Well, like I say, Judge, I think that to me the concern that that issue addresses is one about inconsistency in decisions based on the same evidence, and you don't have that problem here because of the fact that these cases are here together before the court. So we're not going to get an inconsistent decision based on the same evidence. That's how the Supreme Court has explained collateral estoppel? Well, I don't know that the Supreme Court has addressed this in that way, no. I'm not saying that, Judge, but I'm just saying that it seems to me... If the case isn't final for purposes of collateral estoppel raised to the count until an appeal has been pursued, if one is going to be pursued and there's been a resolution, I'm not sure how the timeliness of the two cases affects the general rule. Well, that's my position, Judge. I think because, like I say, because I think the concern is one of inconsistency, that's a reason to have the requirement of finality. That would be the reason that we have that rule, and so we don't have that issue here. We don't have that problem here in this case because of both cases being here before the court at the same time. I understand what the courts have said. Yes, I realize that, Judge. Counsel, I wanted to go back to the collateral estoppel issue. So you're conceding then that these other defenses, they were not litigated for any material part of the court's ruling in the probate case with respect to the forcible entry and detainer issue? I'm sorry, Your Honor. I'm not sure I understand your question. The opposing counsel has indicated that there are defenses to the anti-nuptial agreement that this client did not raise in the prior proceeding, the forcible entry and detainer. Do you concede that those issues were not resolved at that time? Well, I think they were resolved in the sense, Your Honor, that issues like that are always resolved because the party has a right to present the issue. If there is an issue, they have a right to present it to the court. The question of the execution and validity of the anti-nuptial agreement was before the trial court in the forcible entry and detainer case. That was pled as part of the forcible entry. That was the basis, the existence, the validity of the prenuptial agreement was the basis for which the estate would be entitled to have possession of the property. So the validity of the agreement was before the court. Obviously, the estate is the plaintiff, can't control what defenses the defendant may choose to present in the trial court. Let me see if I understand, following up on Justice Holder White's question, that you seem to be arguing, am I correct in my understanding, that Mr. O'Brien in that proceeding, forcible entry and detainer proceeding, could have raised these various defenses to the anti-nuptial agreement and his failure to do so forfeited those defenses at that hearing. And having forfeited those defenses at that hearing, he can't assert that collateral estoppel doesn't apply at the probate hearing because the matter is subject to litigation and he didn't litigate it. Yes, I think, yes, that's true. I mean, he could have presented these defenses earlier. So you're claiming he forfeited the effort? Yes, I'm saying that. I believe that that would be the case. I mean, that would be true, Your Honor, in any matter in the trial court is that you would have a chance at the hearing to present whatever defense you wanted to present. So the flip side of this is you believe that the hearing, the forcible entry and the detainer hearing, had Mr. Dempsey or whoever counsel may have been at that time for Mr. O'Brien said, we're challenging the premarital prenuptial agreement on these other grounds, that would have been relevant and the court would have entertained that argument? Yes, I believe they would have, Judge, because as I say, the pleading in the case, the complaint for forcible entry and detainer, raised the issue of the prenuptial agreement as being the basis to allow forcible entry and detainer. And the proof that we offered, which was concerning the execution of the agreement, was obviously foundational proof in order to introduce the agreement into evidence in the trial court in the forcible entry and detainer action so the court could consider that as part of the evidence in deciding if forcible entry and detainer was appropriate. So yes, my expectation would have been that whatever defenses Mr. O'Brien had to the prenuptial agreement, he would have presented them in the forcible entry and detainer action to challenge the validity of the agreement because that was the basis for the request for forcible entry and detainer. And by saying that he forfeited presenting those defenses, isn't the flip side of that that that issue was not decided? Those defenses that was not adjudicated, those defenses were not adjudicated in that proceeding? Well, I guess I wouldn't consider it that way, Your Honor. I mean, as in any cases presented to a trial court, each party has an opportunity to present their case. If they choose not to present something for whatever reason, when the court makes its decision, that's still the decision. I mean, you don't get to come back the next day and say, well, gee, I wish I had done this. I think I'll present this now. I didn't present that yesterday, but I'll do it now. The expectation would be that he would have presented whatever defenses he had that he thought the court would have considered as being defenses to the prenuptial agreement. That would have been my expectation. It was my expectation. Well, with collateral estoppel, that only applies to the point of question that was actually litigated versus when you're dealing with race judicata. That applies to things you could have presented. Yes, that's my understanding. Yes, correct. So how do you square that with your argument that he forfeited? How does collateral estoppel apply? Well, I think it's a question of how you define the issue. The issue was the validity of the prenuptial agreement. That was a decision the court made in the forcible entry and detainer action that based on the evidence that the prenuptial agreement was valid. And so, to me, that would foreclose any issue you could raise concerning the validity of the agreement. He found the agreement was properly executed. It was valid. He accepted it in evidence. He based his decision in allowing forcible entry and detainer on the fact that the agreement was in existence and was valid and changed the rights of the parties, if you will, as prenuptial agreements typically do. And so, to me, that would, by defining the issue that way, which is what the issue was, that would cover any defense you could present to the agreement at the hearing. You would have had that opportunity. I know you can't read a person's mind, but why do you think the trial court made those comments to Mr. O'Brien about, you know, this is the result today, but on another day you can present this and that and all of that? Well, I don't know, Judge. As you say, I can't read Judge Carroll's mind, but I think, and I'm sure the court knows, your honors have sat on the trial bench. And even more frequently now, we get folks in front of the trial court who are unrepresented, for whatever reason, and this happens. I see it happen fairly often in our trial court that the judges will make comments such as these, I think, to try to make the pro se litigant feel better or feel like they, you know, that their case has been heard and considered by the court, even though they didn't get the result they wanted. You know, I didn't take it when I was in court that day that Judge Carroll was suggesting that somehow he hadn't made a final decision about this. I just think that he was trying to give a pro se litigant, you know, make him feel a little better about himself under the circumstances. That's about all I can read into it, your honor. Beyond that, I can't say. I guess beyond that, your honors, the other issue about this action, the forcible entry into detainer action versus filing something in the probate court under Section 20-1, I cited in my brief, I think, three different cases that have been decided by the appellate courts here in Illinois, saying that essentially filing one action or the other, whether it's filed in the probate action or it's filed as a forcible entry in detainer, that's not a, that's not, there's nothing wrong with filing a forcible entry in detainer. It's all right to file a forcible entry in detainer action as opposed to filing something in the probate court. So I don't think there's anything about how this proceeded procedurally that is, you know, is somehow a violation of Mr. O'Brien's rights here. I mean, the fact that it didn't proceed through the probate action as opposed to separately, I don't think is a material matter here. So we would ask the court respectfully, your honors, to affirm the decision of the trial court.  Mr. Demstein, any rebuttal, sir? Yes. What Mr. Lee's been talking about is really race judicata. Race judicata is claim preclusion. It has nothing to do with the issues in this case. The only thing that can be barred by collateral estoppel are the issues that are actually litigated, not what could have been litigated. Forfeiture doesn't apply. That's correct. Not under collateral estoppel, under race judicata it does, but they're very separate issues that were being litigated in the probate case versus the forced malnutrition detainer case. And I think Judge Carroll acknowledged in his written ruling as much that there were issues that could have been presented because he indicated on page four of his written ruling that Mr. O'Brien would have a wider range of defenses that were not available in the eviction case. That argument is wrong. The defendant could have raised all those exemptions set forth in 750 ILCS 10-7, which are the defenses to the enforceability of a prenuptial agreement. In fact, had Mr. Dempsey been on board at that time, I'm sure he would have either raised all these issues or at least consolidated the case with the estate to have this all done at one hearing. So Judge Carroll essentially acknowledged that I'm barring Mr. O'Brien from even presenting defenses to the enforceability of the antenuptial agreement that were not raised. And again, Mr. O'Brien was a pro se litigant at that time. And I think what's sort of fundamentally unfair about the whole procedure is that Mr. O'Brien, again, being a pro se litigant, shows up at a hearing on a complaint for forcible intermutainer thinking he's going to just litigate whether or not he can stay in the house he shared with his wife. And ends up, after the hearing and this court's ruling, losing all rights to claim on the estate, losing all rights to claim that he's in error when he's just going to the court expecting that he's going to find out if he can continue to stay in the house. And I think this court, as we indicated in our brief, has the ability to, even if the court finds that Clarell Staple applied, to not apply it because of fundamental unfairness in this case. And the court previously inquired about the legal definition of an error, and I was able to put my finger on the case law on that subject. And basically, the case law is stated in Cahill v. Cahill, which is an Illinois Supreme Court case from 1949. It's 402 Illinois 416, or 84 Northeast 2nd 380, in which the Supreme Court said that an error is any person who would be able to receive, had the decedent died in testate, under the Illinois Probate Act. And certainly, the Illinois Probate Act makes provisions for a spouse of a deceased person who dies without a will to receive a portion, a half of it, a spouse's estate. And so, I think it's clear it is a term of art, and it's been interpreted by the Illinois courts, but that term includes anyone who could have received from Susan Batwitz O'Brien's estate, had she died in testate. In this case, it would be her children and her spouse. So, I think, clearly, Mr. O'Brien, in fact, was an error at the time the case went to trial and the forcefully entering detainer complained. And again, there was still an order of finding airship that had been entered and was not modified in the probate case that indicated that he was an error. So, I believe that the trial court errored both in entering the order of possession and, likewise, finding the cloud was stoppable and barred my client from having a hearing on all issues relating to the validity of the ins and outs of agreement within the probate case. You heard the questions I asked about finality of the decision in the forcefully entering detainer case. What are your thoughts? I think, clearly, it was not a final judgment because there was still the potential for appeal. When the court entered the order finding the cloud was stoppable applied, it entered in the same order, lifting the stay of the order of eviction and denying the motion to reconsider. So, that started the clock ticking on the 30 days my client had to appeal. My client obviously did file an appeal, so it's clearly not a final order until all my client's appellate rights are exhausted. I don't think it satisfies any definition of being a final order at the time that Judge Carroll found the cloud was stoppable applied. Did you argue that with Judge Carroll? Yes, we argued that cloud was stoppable and should not apply because my client had filed a motion to reconsider and a motion to stay and that's why we were before the court. It indicated to Judge Carroll that we believe he erred in entering the order of possession because the probate act doesn't allow the eviction of errors occupying the property. Okay, thank you counsel. We'll take this panel and advise them to be in recess for a few moments.